(60 South. 606.)

No. 19,272.

NUGENT v. W. R. PICKERING LUMBER CO. et al.

(Dec. 16, 1912. Rehearing Denied Jan. 20, 1913.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT (§ 244*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where a locomotive employed in hauling loaded skeleton cars from a siding to a sawmill was manned by an engineer, fireman, and brakeman, and the fireman, who was an experienced brakeman, elected to couple the tender to a log car, from which protruded a log to an unusual and dangerous distance, and persisted in such undertaking despite the warnings of the track foreman standing near, and was killed by the crushing of his skull between the end of the log and the deadwood of the tender, *held*, that the facts present a clear case of contributory negligence, debarring recovery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 776, 777; Dec. Dig. § 244.*]

*(Additional Syllabus by Editorial Staff.)*

2. MASTER AND SERVANT (§ 111*)—INJURIES TO SERVANT—SAFE PLACE TO WORK.

It was the duty of a lumber company operating a train to make the space between loaded cars as safe as practicable for brakemen engaged in coupling or uncoupling them, and it is negligence in loading to leave a car in such a condition as to materially increase the danger of coupling it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217; Dec. Dig. § 111.*]

Appeal from Twelfth Judicial District Court, Parish of Vernon; Don E. So Relle, Judge.

Action by Mrs. Lela Nugent against the W. R. Pickering Lumber Company and others. From a judgment for plaintiff, defendants appeal. Reversed, and suit ordered dismissed.

Stubbs, Russell & Theus, of Monroe, and W. W. Thompson, of Leesville, for appellants. Foster & Ferguson, of Leesville, and Hudson, Potts & Bernstein, of Monroe, for appellee.

LAND, J. Plaintiff sued for damages for the death of her husband, Albert Nugent, a servant of the defendants, who in May, 1911, was killed while attempting to couple a locomotive to a car loaded with logs. The petition alleged that Albert Nugent was employed in the dual capacity of fireman and brakeman, and that while he was engaged in the discharge of his duties, at spur No. 13, on defendants' line, and while attempting to couple engine No. 11 to a car loaded with logs, his head was caught between the tender of said engine and the end of a log which protruded over and beyond the end of said car a sufficient distance to come in contact with the end of the tender, and when the tender and car were coupled his brains were mashed out. The petition alleged that the death of Albert Nugent was caused by no fault of his own, but was due to the great and gross carelessness of defendants in loading said car in such a manner that the protruding logs endangered the life and limbs of the brakeman engaged in coupling said car to the tender of the locomotive, and to the failure of the defendants to properly inspect the loading of said car, and otherwise to

protect their employés from unnecessary danger.

Defendants answered, denying generally and specially each and every allegation contained in the petition, denying any fault or negligence on the part of the defendants in the matters and things charged against them in the petition, and any damage or injury to the deceased or to the plaintiff through the fault or negligence of the defendants or either of them. Further answering, the defendants allege, in the alternative, that:

If defendants' "employés were negligent in the act or acts producing said death, then and in that event defendants allege that they or neither of them are responsible in the damages herein, for the reason that said deceased, Albert Nugent, was guilty of negligence proximately contributing to his injury and death, which bars the right of plaintiff herein to a recovery."

Further answering, the defendant alleged in the alternative that, if Albert Nugent was killed as alleged, his death was the result of a risk which he necessarily assumed, an ordinary risk of the employment in which he was engaged.

Further answering, defendants alleged in the alternative that, if the death complained of was caused by the negligence of any of their employés, then such employés were the fellow servants of the deceased for whose negligence defendants are not responsible.

The case was tried by the judge, without a jury, and a judgment for $10,000 was rendered in favor of the plaintiff. Defendants appealed.

The appellant contends in this court that the evidence shows that Albert Nugent was employed as fireman, and not as a brakeman, and acted outside the scope of his employment; that the danger of making the coupling, under the circumstances, was obvious to a man of ordinary intelligence, that the plaintiff was warned of the danger by another employé, but disregarded the warning; and that the protrusion of logs beyond the end of the loaded cars was an ordinary and usual incident in the logging business.

In May, 1911, Albert Nugent, a young man just of age, while employed as fireman on one of defendants' locomotives, was instantly killed while attempting to couple the tender to a train of loaded log cars standing on a spur track. The manner of his death is correctly stated in the petition.

The first question which we shall consider is whether the deceased, as alleged, was employed in the dual capacity of fireman and brakeman. The crew of the locomotive, which was used on the main line of the defendant's railroad, consisted of an engineer, fireman, and brakeman, the last-named also performing some of the duties usually discharged by conductors. The principal business of this train crew was to haul trains of logs from the spur track to the mill of the defendants at Barham. W. D. Howard, woods foreman, had charge of the logging operations and trains of the defendant. Mr. Howard testified that he hired Nugent as fireman, and told him that he did not have to brake; and that the engineer had no authority to assign to Nugent any of the duties of a brakeman. W. H. Dodd was employed as brakeman, and the crew had very little braking to do. F. M. Culver, the engineer, testified that it was Dodd's duty to make couplings; and that Nugent on the day of the fatal accident had no orders to make the coupling, and did it on his own accord. We make the following extracts from Dodd's testimony:

"It was my duty to do the braking, and I did it to the best of my ability. * * * Nugent had no business there. It was his first coupling and without any instructions. * * * I had no idea that Nugent was making the coupling until after the accident."

It appears that Dodd was at the other end of the log train when Nugent attempted to make the coupling. According to Dodd's testimony, after throwing the switch, he per-

ceived the extreme protrusion of the log, and, realizing the danger of making the usual link and pin coupling, went in search of an appliance called a "reach" or "rooster," a device in the form of the letter "S," intended to furnish a longer coupling than the one just mentioned. Dodd failed to find, or could not get, this appliance, and after the accident succeeded in making the coupling by ramming back the log a few inches and fixing the link and pin in such positions that the coupling was effected by the contact of the drawheads.

Nugent had been employed in the dual capacity of fireman and brakeman by the defendant on another logging road under the supervision of Howard, the same woods foreman, and on another locomotive in charge of Culver, the same engineer. Later Howard was transferred to Barham. The three men were very good friends, and their relations led to the re-employment of Culver and Nugent on the railroad connected with the Barham plant. While Nugent was hired as "fireman," the great weight of the evidence in the record is to the effect that a fireman on a logging road is expected to assist in coupling cars when the brakeman is otherwise employed.

We are therefore not prepared to say that Nugent, on the occasion in question, was acting beyond the scope of his employment.

[2] As it was the duty of the defendants to make the space between loaded cars as safe as practicable, for brakemen engaged in coupling or uncoupling them, we think that they were guilty of negligence in respect to the loading, or the leaving of the particular car in question in such a condition as to materially increase the danger of coupling it to the tender.

[1] The next question is the alleged negligence, or contributory negligence, of the deceased. C. L. Davis, track foreman, was called and examined as a witness for the plaintiff. Davis was the only witness who saw the accident. He was standing near the front, and on the right side, of the first log car, which was to be coupled to the tender. He saw the brakeman walking along the side of the log train, seemingly looking at the logs, and, when the brakeman got near the end of the train, he saw Nugent step off the engine, and run towards the place where Davis was standing. We make the following extracts from the testimony of this witness:

"Mr. Nugent stepped off and came up where I was standing and picked up the pin, and looked like he was fixing to couple. The engine was coming slow, and I remarked that, 'You better look out,' and he did not seem to hear me or notice it, and when it got near I said, 'Come out of there,' that way. When I spoke the first time he squatted, he had the pin in his right hand, and caught the link with his left hand, but he never put the pin in the coupling. The log caught him between the deadwood and the end of the log—mashed his brains out."

On cross-examination:

"Q. Mr. Davis, was that log that struck Nugent easy to be seen sticking out as it was?
"A. Only from the engineer's side.
"Q. Could you ever stand in front of the car and tell that it was sticking out too far?
"A. Well, yes.
"Q. Were you to one side of it?
"A. Yes, sir.
"Q. Was it plain and open to view?
"A. Yes, sir.
"Q. Now, what was it, Mr. Davis; give me in exact words how and what you said to Nugent?
"A. Well, when he first run up to where I was standing, I remarked, 'Look out.'
"Q. Did you say it in a mild or loud tone?
"A. Loud enough for him to hear it. He never answered me. The engine got near, and he did not notice me, and I hollowed to him again and said, 'Come out of there,' and instead of doing that he squatted down with the pin in his hand and caught the link in his left hand, and the log caught him."

This evidence is not contradicted in any respect, and must be given its proper weight in the consideration and determination of this case. Davis, who was not a brakeman, saw and appreciated the danger of the situation, and warned Nugent to "look out" and to "come out." It is not shown that Nugent was deaf, or that his hearing was bad. Nu-

gent could not help seeing the projecting log, yet undertook to stoop down, and under it, to make the coupling, despite the warnings of Davis. In some way not explained by the evidence, at the moment of impact, Nugent's position was such that his head was between the end of the log and the deadwood of the tender. Nugent was a brakeman of experience, and doubtless saw the danger of the situation, but chose to disregard the danger and the warnings, and in so doing contributed to his own death. Dodd's action in the premises shows what a prudent brakeman *did* under the same circumstances, and we are satisfied from the evidence that Nugent failed to exercise ordinary care on the occasion in question.

It is therefore ordered that the judgment below be reversed, and it is now ordered that plaintiff's suit be dismissed, with costs.